Shelly PERRY, etc., Plaintiff,

v.

**HOUSEHOLD RETAIL SERVICES, INC., et al., Defendants.**

Civil Action No. 95–D–45–N.

United States District Court, M.D. Alabama, Northern Division.

Aug. 5, 1996.

See also 953 F.Supp. 1370.

C. Knox McLaney, III, Angela L. Kimbrough, McLaney & Associates, Montgomery, AL, James O. Latturner, Edelman & Combs, Chicago, IL, Lynn W. Jinks, III, Jinks, Smithart, Jackson & Daniel, L.L.C., Union Springs, AL, Cathleen M. Combs,

Daniel A. Edelman, Charles E. Petit, Edelman & Combs, Chicago, IL, for Shelly Perry.

John E. Goodman, Norman Jetmundsen, Jr., Michael D. McKibben, Charles Keith Hamilton, Julie Scharfenberg Elmer, Andrew J. Noble, III, Bradley, Arant, Rose & White, Birmingham, AL, for Household Retail Services, Inc., Household Bank F.S.B., Household Intern., Inc. and Household Bank (Illinois) N.A.

Edward P. Turner, Jr., Halron W. Turner, Turner, Onderdonk, Kimbrough & Howell, P.A., Chatom, AL, for Best Reception Systems, Inc.

Home Video Electronics, Inc., Douglasville, GA, pro se.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant Household International, Inc.'s ("HI") motions to dismiss and for summary judgment filed August 31, 1995 and November 3, 1995, respectively. Because the motions involve similar issues and arise from the same set of facts, the court will address them simultaneously. The plaintiff responded in opposition on November 20, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant's motions are due to be denied.

HI contends that it should be dismissed based on the following: (1) the court lacks personal jurisdiction; (2) there is insufficiency of service of process; and (3) venue is improper. HI also moves for summary judgment based on the lack of personal jurisdiction ground and on the additional ground that HI has no connection whatsoever to the allegations in the plaintiff's amended complaint.

### I. Insufficiency of Service of Process and Venue

■ At the outset, the court finds that HI's objections to service of process and venue are without merit. HI has provided no explanation as to why service was invalid. Moreover, under the traditional notions of venue, it is proper to sue a tortfeasor in the jurisdiction in which the tort occurred. *Creekmore v. United States,* 905 F.2d 1508, 1511 (11th Cir.1990) (discussing Alabama law); *Fouche v. Jekyll Island–State Park Auth.,* 713 F.2d 1518 (11th Cir.1983).

### II. Personal Jurisdiction

■ It is well established that a parent corporation, such as HI, is not subject to suit in a state simply because one of its subsidiaries is located within that state. *Cannon Mfg. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *see also* Charles A. Wright, et al., *Federal Practice and Procedure* § 1069 (1987 & Supp.1995) (Absent some additional theory like alter ego, a parent corporation is not automatically subject to personal jurisdiction.). As such, the plaintiff attempts to avoid this rule by asserting that HI is the alter ego of Household Retail Services, Inc. ("HRSI"), or alternatively, that HI is involved in some civil conspiracy with HRSI. However, HI contends that there is no evidence that it used HRSI as its alter ego, or that it and HRSI conspired to injure the plaintiff. Consequently, HI contends that personal jurisdiction over it may not be premised on either theory.

The standard under which the court must evaluate HI's jurisdictional challenge is well-settled:

> In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant.... A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. The district court must construe the allegations in the complaint as true, [but only] to the extent they are uncontroverted by defendant's affidavit or deposition testimony.... In addition, where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff.

*Morris v. SSE, Inc.,* 843 F.2d 489, 491 (11th Cir.1988). Of course, a non-movant's burden

on overcoming a motion for directed verdict (now motion for judgment as a matter of law) is the same as that for overcoming a motion for summary judgment, in that he must submit legally sufficient evidence to create a genuine issue of material fact as to each essential element of his claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987).

■■■ The concept that a corporation is a legal entity existing separate and apart from its shareholders is well-settled law. *Backus v. Watson,* 619 So.2d 1342, 1345 (Ala.1993). The mere fact that one corporation owns all the stock of another corporation does not destroy the separate corporate identities. *Messick v. Moring,* 514 So.2d 892, 895 (Ala. 1987). In short, "[p]iercing the corporate veil is not a power that is lightly exercised." *First Health, Inc. v. Blanton,* 585 So.2d 1331, 1334 (Ala.1991).

■■■ In order to establish that one party is the alter ego of another party, or to pierce the corporate veil, one must show the following:

1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;

2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;

3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*First Health, Inc. v. Blanton,* 585 So.2d 1331, 1334–35 (Ala.1991) (quoting *Messick v. Moring,* 514 So.2d 892, 894–95 (Ala.1987)) (internal quotations and citations omitted) (spacing added); *see also United Steelworkers of America v. Conners Steel Co.,* 855 F.2d 1499, 1507 (11th Cir.1988) (setting forth a similar three-prong test), *cert. denied,* 489 U.S. 1096,

109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *Hollingshead v. Burford Equip. Co.,* 828 F.Supp. 916, 918–19 (M.D.Ala.1993) (same). "Given the fact-intensive nature of ... [this] analysis, the determination is typically one to be resolved at trial, where the trier of fact can make choices as to the credibility and weight of the evidence." *In re Silicone Gel Breast Implants Products Litig.,* 837 F.Supp. 1128, 1133 (N.D.Ala.1993) (citing *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1379 (10th Cir.1980); 1 Fletcher Cyc. Corp. § 41.95 (Perm. ed.)). However, this is to be read in light of Rule 56, which allows summary judgment if a trial could have but one result. *Id.*

■■■ In considering the indicia of control, the Supreme Court of Alabama has stated that the following factors "are certain circumstances which are important and which, if present in the proper combination, are controlling:"

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their

orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

*Duff v. Southern Ry. Co.,* 496 So.2d 760, 763 (Ala.1986) (citations and internal quotations omitted). Here, the plaintiff contends that seven of the eleven factors listed above are satisfied and further discovery could disclose more. On the other hand, HI asserts that only one of the factors has been satisfied—certain officers and directors of HI and HRSI overlap. As such, HI contends that this factor "is not, by itself, sufficient to justify piercing the corporate veil ... [because] the sharing of directors is a practice frequently found in parent and subsidiary relationships." *In re Silicone Gel Breast Implants Products Liability Litig.,* 837 F.Supp. 1128, 1135 (N.D.Ala.1993).

The court recognizes that "[n]o one of these factors is dispositive; nor does the list exhaust the relevant factors." *Duff,* 496 So.2d at 763. Here, there is evidence of at least three of the listed indicia; namely, (1) the key officers and directors overlap; (2) the parent corporation finances the subsidiary; and (3) the subsidiary corporation does not act independently in its interest but takes orders from the parent corporation in the latter's interest. Moreover, there is evidence of misuse and harm or loss resulting from the misuse. Therefore, given evidence of these factors and the numerous factual disputes concerning this area, the court finds that the determination of whether the corporate veil should be pierced is an issue for the trier of fact at trial, where the trier of fact can make choices as to credibility and weight of the evidence. In addition, given the court's determination that Household International's amount of control over HRSI, if any, is a question best left for the trier of fact at trial, the court finds that genuine issues of material fact exists as to whether Household International and HRSI engaged in a civil conspiracy, or were otherwise joint tortfeasors.

HI also contends that the court does not have jurisdiction over the claim brought by the plaintiff under the Illinois Consumer Fraud Act because that Act may only be invoked by Illinois residents. In support thereof, HI relies on *Swartz v. Schaub,* 818 F.Supp. 1214 (N.D.Ill.1993), wherein the court held that the Illinois Consumer Fraud Act was only intended to protect Illinois consumers. However, the court rejects the holding in *Swartz v. Schaub,* 818 F.Supp. 1214 (N.D.Ill.1993); rather, the court is inclined to follow the holding in *Cirone–Shadow v. Union Nissan of Waukegan,* No. 94–C–6723, 1995 WL 238680 (N.D.Ill. April 20, 1995), wherein the court specifically rejected the holding in *Swartz* and held that the Act does not specifically limit its scope to the protection of Illinois residents. Specifically, the court in *Cirone–Shadow* noted that the Illinois Consumer Fraud Act "prohibits fraud 'in the conduct of any trade or commerce.' " *Id.* at *4 (citing 815 ILCS 505/2). The court went on to cite the Act's definition of "trade" or "commerce," which states:

the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

*Id.* at *5 (quoting 815 ILCS 505/1(f)). Relying on *Fry v. UAL Corp.,* 136 F.R.D. 626, 637 (N.D.Ill.1991), the court found that the above-quoted statute did not limit its scope to the protection of Illinois residents.

In addition, the Illinois Consumer Fraud Act has been applied to several other cases involving Illinois corporations, but not Illinois consumers. *See, e.g., Martin v. Heinold Commodities,* 117 Ill.2d 67, 109 Ill.Dec. 772, 510 N.E.2d 840 (1987); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,* 749 F.Supp. 869 (N.D.Ill.1990); *Gordon v. Boden,* 224 Ill.App.3d 195, 166 Ill.Dec. 503, 586 N.E.2d 461 (1991), *appeal denied,* 144 Ill.2d 633, 169 Ill.Dec. 141, 591 N.E.2d 21, *cert. denied,* 506 U.S. 907, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992). In *Martin,* for example, the court held that Illinois law—both the Illinois Consumer Fraud Act and the Illinois law of fiduciary responsibility—would be applied to all members of the class because Illinois had a substantial interest in seeing

that companies operating in the state operate lawfully. *Martin*, 109 Ill.Dec. at 779, 510 N.E.2d at 847.

## CONCLUSION

For the foregoing reasons, it is CONSIDERED and ORDERED that Household International, Inc.'s motions to dismiss and for summary judgment be and the same are hereby DENIED.